In re TRI-STATE COAL & COKE CO. et al.

(District Court, W. D. Pennsylvania. March Term, 1918.)

No. 35.

1. SEARCHES AND SEIZURES ⊂⊃7—CONSTITUTION—SCOPE OF PROTECTION.
  Const. Amend. 4, guaranteeing against unreasonable searches and seizures, etc., embraces all persons, even those accused of crime, etc., although limitations on the scope of the protection, such as the right to search the person of an accused when legally arrested, etc., is also recognized.

2. SEARCHES AND SEIZURES ⊂⊃3—AFFIDAVITS—SUFFICIENCY.
  Affidavits for search warrants under Act June 15, 1917, c. 30, to seize books, etc., on the ground they were used to commit a felony, *held* insufficient, both under act and Const. Amend. 4, constituting mere conclusions as to the offense committed, and not sufficiently designating the books, etc., sought.

3. SEARCHES AND SEIZURES ⊂⊃7—ACQUIESCENCE—ACT OF AGENT.
  That an agent of petitioners, whose property had been seized under search warrants illegally issued, consented to execution of the warrants, *held* not an acquiescence which would deprive petitioners of their constitutional rights.

At Law. In the matter of the petition of the Tri-State Coal & Coke Company and others to have returned to them certain books, papers, and writings. Search warrants quashed, and books, etc., ordered restored.

E. Lowry Humes, U. S. Atty., of Pittsburgh, Pa., for the United States.

Nash Rockwood, of New York City, and Diamond & Zacharias, of Pittsburgh, Pa., for defendants.

THOMSON, District Judge. Three several petitions are presented to the court, one by the Tri-State Coal & Coke Company, one by the Pennsylvania Central Coal Company, and one by T. F. Barrett, praying for an order directing that all books, papers, writings, and other property of the several petitioners, alleged to have been illegally seized and taken by the United States marshal, be returned.

The property was seized on search warrants dated February 21, 1918, issued by the United States commissioner for this district, supported by affidavits of Edgar B. Spear, special agent of the Department of Justice. The deputy marshal serving the warrants made return in each case on February 23, 1918, setting forth in connection therewith a general schedule of the property seized on each writ.

A little later petitions were presented to Roger Knox, United States commissioner, who had issued the warrants alleging the illegality of the search warrants, and that the property was unlawfully seized, and praying that the property and papers be returned to the petitioners. A hearing was had before the commissioner, in which testimony on behalf of the petitioners and on behalf of the government was taken. Certain of the papers seized were returned and others were retained, and on hearing the commissioner refused the prayer of the petition.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The search warrants· authorized the entry upon the premises in question "to search for, seize, and take away certain property, to wit, contracts, books' of account, minute books, ledgers, journals, cash books, day books, memoranda, and order books, check books, receipt books, and other documents, which other documents were more particularly enumerated, described, and indexed by words, letters, and figures, as follows, to wit." But following this there is no description or designation whatever.

[1] The protection of the people of the United States against unreasonable searches and seizures has been guaranteed by the Fourth Amendment of the Constitution of the United States, in these words:

"The right of the people to be secure in their persons, houses, papers, and ·effects against unreasonable searches and seizures shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons and things to be seized."

The protecting scope of this constitutional provision, as well as its limitations, have been considered and enunciated in various decisions of the Supreme Court, among which may be cited Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877, Bram v. United States, 168 U. S. 532, 18 Sup. Ct. 183, 42 L. Ed. 568, Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and many others.

These cases all recognize, not only the binding force of this constitutional provision, but its high necessity to protect the sanctity of the home and the privacies of life; that this protection is so broad and ample that it embraces all persons, even those accused of crime; and that the duty of giving it full effect rests upon all intrusted under our federal system with the enforcement of the laws.

In Weeks v. United States, the following limitations are distinctly recognized: The right to search the person of the accused when legally arrested, to discover and seize the proofs of his crime; the right to seize the tools of the burglar, or other proofs of guilt found upon his arrest within the control of the accused; the right to offer during the course of a trial papers, though unlawfully seized, unless reasonable application for their return has been made to the court.

[2] The act of Congress of June 15, 1917 (40 Stat. 217, c. 30), under which the search warrants in this case were issued, very carefully guarded against any invasion of the constitutional provision. It clearly sets forth the three grounds upon which alone a search warrant may issue:

(1) When the property was stolen or embezzled, in violation of a law of the United States.

(2) When the property was used as a means of committing a felony.

(3) When the property, or any paper, is possessed, controlled, or used in violation of section 22 of this act.

By section 3, title 11, a search warrant cannot be issued but upon probable cause, supported by affidavit naming or describing the per-

son and particularly describing the property and the place to be searched.

Under section 5, title 11, the affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist.

The opinion in the very recent case of Veeder v. United States, 252 Fed. 414, ——— C. C. A. ———, wherein the search warrant was quashed by the Circuit Court of Appeals of the Seventh Circuit, covers this case completely. There the affidavits and depositions in support of the warrant were much fuller and more specific than in the case at bar. The court held there that no search warrant shall issue unless the judge shall first be furnished with facts—not beliefs, or surmises, but facts—which, when the law is properly applied to them, shall tend to establish the necessary legal conclusions, or tend to establish probable cause for believing that the legal conclusion is right, and that the finding of a legal conclusion or a probable cause from the exhibited facts is a judicial function, and cannot be delegated by the judge to the accuser.

The search warrants here issued were totally and fatally defective. All that the affidavit sets forth is that the property referred to—

"has been used as the means of committing certain unlawful felonies; that is to say, the felony of knowingly and willfully, with knowledge that the price of bituminous coal has heretofore been fixed at $2.45 per ton, f. o. b. mines, in accordance with the regulations prescribed under and by virtue of the Food and Fuel Act of Congress approved August 10, 1917, to ask, demand and receive higher prices per ton for bituminous coal at the mine than the price theretofore prescribed by the said regulations under the said act of Congress, and the further felony of combining, conspiring, agreeing, and arranging with other persons to exact excessive prices for bituminous coal, said prices being higher prices per ton at the mine than the prices theretofore prescribed by the regulations prescribed under and by virtue of the Food and Fuel Act of Congress approved August 10, 1917, and the further felony of aiding and abetting the felony of making, demanding, and receiving higher prices per ton for bituminous coal at the mine than the price theretofore prescribed by the said regulations under the act of Congress of August 10, 1917."

These averments are mere conclusions, not facts. As said in the Veeder Case:

"There is nothing but the affiant's application of his own undisclosed notion of the law to an undisclosed state of facts; and under our system of government the accuser is not permitted to be also the judge."

The affidavit does not even set forth the person who committed the alleged felonies, does not sufficiently designate and describe the property to be seized, does not set forth how the books and papers were used as the means of committing a felony, and is otherwise defective.

The issuance of the search warrants, and the seizure of the petitioners' books, papers, and property thereunder, was a palpable and flagrant violation of their rights guaranteed by the Constitution. I have read carefully the testimony offered before the commissioner, and fail to find any such agreement as would make valid and justify the detention of the papers and property thus unlawfully seized and retained.

[3] Any acquiescence by some agent as to the seizure and detention of the books and papers was simply a choice of evils, when confronted by an officer of the United States armed with a warrant which he was determined to execute. By virtue of no such means can the high constitutional rights of a citizen be invaded or taken away.

I am authorized to state that the views expressed in this opinion are concurred in by Judge ORR.

PER CURIAM. And now, to wit, March 21, 1918, the search warrants in question are quashed, and it is ordered and directed that all books, papers, writings, and other property of the said several petitioners, so as aforesaid illegally taken, and now in the custody and control of the United States attorney for the Western district of Pennsylvania, or in the custody and control of the said Edgar B. Spear, special agent of the Department of Justice, be restored and returned to the respective petitioners from whom the same were taken, together with all copies, photographs, or memoranda thereof made since the same were taken.

At the request of the United States attorney, an exception is noted to the foregoing order of the court, and at his request a bill is sealed.

In the matter of the return of papers ordered by the court in connection with the search warrants issued against the Tri-State Coal Company, the Pennsylvania Central Coal Company, and T. F. Barrett, I now hand to the court the papers ordered returned, the defendants having declined to give us a receipt, in order that the court may have a record of the compliance with the order of court.

[Signed] E. Lowry Humes, United States Attorney.

THOMSON, District Judge. And now, this 21st day of March, A. D. 1918, the United States attorney having turned over to the clerk, in the presence of the court, the papers directed by order this day to be delivered to the respective parties from whom they were taken by virtue of the search warrants designated in the opinion this day filed, the same are directed by the court to be delivered to the counsel who are now present in court of the parties, respectively, to whom the said papers belong.