### UNITED STATES v. RYKOWSKI. SAME v. KOZMAN. SAME v. KEYDOSZIUS.

(District Court, S. D. Ohio, E. D. September 22, 1920.)

Nos. 31–33.

1. **Intoxicating liquors ☞248—Belief of affiant insufficient ground for issuance of search warrant.**

   Under Volstead Act, tit. 2, § 2, providing that officers mentioned in Rev. St. § 1014 (Comp. St. § 1674), can issue search warrants under the limitations of Act June 15, 1917, c. 30, an affidavit that affiant has reason to believe and does believe that a still is being conducted on certain premises is insufficient, either under section 1014 or the act of 1917; it being necessary that the affidavit state the facts showing probable cause for issuing the search warrant, or that the commissioner hear evidence to determine such cause.

2. **Intoxicating liquors ☞249—Description of premises to be searched held not sufficient.**

   A description of the premises to be searched for illicit operation of still, as a stated street and number in a named city, is insufficient, where there were both north and south streets of that name.

3. **Intoxicating liquors ☞249—Search of residence at night unlawful, unless directed by warrant.**

   It was unlawful to search a residence at night for illicit operation of still, where the search warrant contained no direction that it might be served at any time of the day or night.

4. **Intoxicating liquors ☞255—Illicit liquors and stills not returned, though seized unlawfully.**

   Where liquors and stills being used by defendants in violation of the law were seized by officers acting under invalid search warrants, the property will not be returned to defendants, though the evidence obtained by the search cannot be used against them, because of the illegal methods by which it was procured.

5. **Criminal law ☞395—To use evidence procured by illegal search, government must prove authority of wife to consent to search.**

   Property seized under an unlawful search warrant cannot be used in evidence against accused, merely because his wife consented to the search, there being no presumption that she was his authorized agent to consent to such search, so that the government must prove that she had such authority before it can rely on her consent.

Separate prosecutions against one Rykowski, one Kozman, and one Keydoszius for illicit operation of stills. On motions by Rykowski and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Kozman for return of property seized, and by Keydoszius for a new trial. Applications for return of property denied, but new trial granted.

James R. Clark, U. S. Dist. Atty., and R. T. Dickerson and Thos. H. Morrow, Asst. U. S. Dist. Attys., all of Cincinnati, Ohio.

Murphy, Elliff & Leen, of Dayton, Ohio, for defendant Keydoszius.

SATER, District Judge. The affidavit on which a warrant was obtained on March 3 to search the premises of Rykowski is lost, but the warrant recites that the affiant has reason to believe and does believe that a fraud upon the revenue of the United States is being committed upon and by the use of certain premises for illicit making, keeping and storing of distilled spirits containing more than one-half of 1 per cent. of alcohol by volume "and distilling apparatus," "being the premises of 2311 E. 1st, Dayton, O., John Doe." Another affidavit was issued on April 6, whose contents differ from those of the warrant of March 3 mainly in that the premises are said to be those of John Doe (Rykowski), 2311 East First street, in the city of Dayton. The search warrant follows the language of the affidavit. The return on the older warrant purports to have been made on April 6, and states that on making the search there were found a "double still and condenser complete, but not set up or in operation, 50 gallons raisin mash fit for distillation, and six gallons finished product." The later warrant purports to have been returned April 8, and states that in pursuance of the search made there were found "complete still, mash fit for distillation, six gallons finished product." Both warrants were marked filed by the United States commissioner on April 22. The search disclosed what I take to be the disassembled parts of a crude still. The evidence is conflicting as to whether the warrant was displayed and explained to Rykowski's wife—he being absent at the time the search began, but returning before it was completed.

The affidavit for a warrant to search Kozman's place, made April 13, was also on belief that "a fraud upon the revenue of the United States has been and is being committed upon and by the use of a certain still and contents for making distilled spirits, being the premises of William Kozmar, 123 Garfield St.," in Dayton, Ohio. The warrant as to language does not differ from the affidavit. The return, purporting to have been made on April 14 and filed on May 20, states that there were found on Kozman's premises a double still complete, 4 full barrels of mash, 2 barrels containing raisins, and a small quantity of finished product. The search was made at a late hour at night at 123 North Garfield street, there being also a South Garfield street. The family had all retired. Without any pretext of having a warrant to search Kozman's barber shop at 1329 East Third street, the officers repaired there at a still later hour, entered the premises, and made a search. Rykowski and Kozman have applied for a return of their property.

The affidavit for a search warrant in the Keydoszius case, made April 13, is also on belief that "a fraud upon the revenue of the United States has been and is being committed upon and by the use of certain

premises, for making, keeping, and storing of illicit spirits, mash, and materials for making spirits and distilling apparatus, being the premises of John Doe (Kardosi), corner of Troy and Dell streets," in Dayton. My understanding is that the warrants (two having been issued) contain the same recitals in so far as the charge made against the defendant goes. He operated a soft drink parlor, in the rear of which was a residence occupied by his family. One squad of officers searched those premises, after reading the warrant to Keydoszius' wife. Keydoszius himself was absent, but when he came he protested vigorously against the search. There were found on the premises three barrels of raisin mash and two jugs containing raisin jack, and parts of what would seem to have been a still. While the search of such premises was in progress, another squad of officers searched other premises belonging to him. He was tried to a jury and convicted, and the case now stands on a motion for a new trial; his application for a return of the property seized having been previously overruled, on the theory that his wife's consent to the search was binding on him.

[1] In the opinion heretofore filed in this court in the case of U. S. v. Borkowski et al., 268 Fed. 408, it was ruled that the form of affidavit and search warrant found in Swan's Treatise (21st Ed.) pp. 933, 934, and in Loveland's Forms of Fed. Pr. vol. 1, pp. 1088, 1089, should be followed. Attention was also drawn to Kercheval v. Allen, 220 Fed. 265, 135 C. C. A. 1, as to the form there used. In Ripper v. U. S., 178 Fed. 24, 101 C. C. A. 152, it is made clear what the contents of the affidavit and warrant must be; the language being as follows:

"The affidavit on which the warrant was issued set forth no facts from which the existence of probable cause could be determined; nor did the warrant itself recite the existence of such cause. There was no recital in the warrant that the officer who issued it found or determined there was probable cause, further than the mere statement that some one had declared under oath that he had good reason to believe, and did believe, the accused was violating the law. It is true that section 3462, Rev. St. (U. S. Comp. St. 1901, p. 2283), authorizes a search warrant to be issued upon such an affidavit, but we think that all the requisites are not there expressed. This was also the view of the Attorney General in an opinion delivered June 19, 1903 (24 Ops. Attys. Gen. 685, 688). The oath in writing should state the facts from which the officer issuing the warrant may determine the existence of probable cause, or there should be a hearing by him with that purpose in view. The immunity guaranteed by the Constitution should not be lightly set aside by a mere general declaration of a nonjudicial officer that he has reason to believe and does believe, etc. The undisclosed reason may fall far short of probable cause."

In that case the testimony of the revenue officers was held admissible, notwithstanding the insufficiency of the affidavit and warrant, but there had been no application made for the return of any property prior to the trial of the case on its merits, nor had the cases of Weeks v. U. S., 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and Silverthorne Lumber Co. v. U. S., 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. —— (January 26, 1920) been decided. In Veeder v. U. S., 252 Fed. 414, 164 C. C. A. 338 (C. C. A. 7), the conditions upon which a search warrant may issue and the character thereof are thus stated, at page 418 of 252 Fed. (164 C. C. A. 342):

"One's person and property must be entitled, in an orderly democracy, to protection against both mob hysteria and the oppression of agents whom the people have chosen to represent them in the administration of laws which are required by the Constitution to operate upon all persons alike. One's home and place of business are not to be invaded forcibly and searched by the curious and suspicious; not even by a disinterested officer of the law, unless he is armed with a search warrant. No search warrant shall be issued unless the judge has first been furnished with facts under oath—not suspicions, beliefs, or surmises—but facts which, when the law is properly applied to them, tend to establish the necessary legal conclusion, or facts which, when the law is properly applied to them, tend to establish probable cause for believing that the legal conclusion is right. The inviolability of the accused's home is to be determined by the facts, not by rumor, suspicion, or guesswork. If the facts afford the legal basis for the search warrant, the accused must take the consequences. But equally there must be consequences for the accuser to face. If the sworn accusation is based on fiction, the accuser must take the chance of punishment for perjury. Hence the necessity of a sworn statement of facts, because one cannot be convicted of perjury for having a belief, though the belief be utterly unfounded in fact and law. The finding of the legal conclusion or of probable cause from the exhibited facts is a judicial function, and it cannot be delegated by the judge to the accuser. No search warrant should be broader than the justifying basis of facts. For example, if a murder has been committed by means of a shot from a gun and by no other means, the search warrant should not direct the officer to enter the accused's home and seize the family register of births and deaths. And as the serving officer has no discretion in executing the search warrant in its entirety, the householder is entitled to have the search warrant quashed."

In that case a petition for a writ of certiorari was denied. 246 U. S. 675, 38 Sup. Ct. 428, 62 L. Ed. 933. It was further said (252 Fed. at page 419, 164 C. C. A. 343), touching the affiant, that—

"All he swears to is that he has good reason to believe and does verily believe' so and so. He does not swear that so and so are true. He does not say why he believes. He gives no facts or circumstances to which the judge could apply the legal standard and decide that there was probable cause for the affiant's belief. There is nothing but the affiant's application of his own undisclosed notion of the law to an undisclosed state of facts, and under our system of government the accuser is not permitted to be also the judge."

The insufficiency of the affidavit and of the warrant that issued upon it caused a reversal, with the direction that the trial court quash the search warrant. The case was followed with approval in Re Tri-State Coal & Coke Co. (D. C.) 253 Fed. 605. In the affidavits and search warrants, in so far as such instruments have been preserved, that were filed or issued, as the case may be, in the cases under consideration, the affiant merely swears that he has good reason to believe and does verily believe certain things. In no instance did he affirmatively swear that anything is true, nor did he in any instance state any facts or circumstances which would enable the United States commissioner to determine whether there was probable cause for his belief. None of the affidavits or search warrants was sufficient, and none of the warrants should have been issued.

The record in each of the above-entitled cases suggests that due care was not used to obtain the correct name of the persons accused. The warrant issued on March 3 in the Rykowski case, on account of its age at the time the search was made, should not have been used at all, and

yet the return on it is more complete than the return made on the later one of April 6.

Section 2, title 2, of the Volstead Act (41 Stat. 305) provides that section 1014, Rev. St. U. S. (Comp. St. § 1674), is made applicable to the enforcement of that act, and that the officers mentioned in section 1014 are authorized to issue search warrants under the limitations provided in title 11 of the act of June 15, 1917 (40 Stat. 217 et seq.). Whether an affidavit is filed and a warrant issued under section 1014, or under the act of June 15, 1917, the contents of each must be the same, but under the 1917 act there is a restriction as to the number of officers that may issue warrants. If United States commissioners will observe the provisions of the 1917 act, there can be no difficulty in the future regarding the requirements of affidavits made to obtain warrants or as to what the warrants upon their face must show.

Under the act of 1917, a search warrant cannot be issued, except upon probable cause supported by affidavit naming or describing the person and particularly describing the property and place to be searched. The commissioner, before issuing the warrant, must examine on oath the complainant and any witnesses he may produce, and must require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing them to exist. An enumeration of all the provisions of the act, which only states the essentials to the procurement of a warrant, which have long been required in English-speaking countries, is unnecessary, as the statute is readily accessible to those desiring to avail themselves of or who are required to act under its provisions.

[2, 3] The description of Kozman's premises was insufficient. There were two Garfield streets, and the statement does not locate his residence on either. There was no authority whatever for searching his barber shop. The search of his residence at night was in disregard of the law, in that the warrant contained no direction that it might be served at any time of the day or night. In none of the warrants under consideration was there compliance with the statutory requirement that the commissioner must insert a direction in the warrant that it be served in the day time, unless the affiants are positive that the property is on the person or in the place to be searched.

[4] It follows from the foregoing that the searches and seizures made in the two cases first named were not such as the law provides. The misfortune of it is, that in each instance there was a violation of the law by the accused party, and yet, under the Silverthorne Lumber Company Case, the government will not be able to avail itself of the information derived from its agents' unwarranted action. In neither of the cases, however, will any of the illicit mash or illicit liquors taken, or stills or parts of stills found, be returned,—the same being contraband. The stills or parts thereof are instruments which have been used, and may possibly be again used, if returned, in violation of the law.

In the trial of certain cases which have gone into judgment, the court admitted evidence of the search and seizure for the reason the person who was in fact the guilty party consented to the search of the premises. In the Keydoszius case the wife, so the government claims, consented to the search, which evidence, however, is controverted. The rule stated in 35 Cyc. 1265, is that nothing will justify searching a dwelling for stolen property without a warrant for that purpose, unless made with the consent or by invitation of the owner, and authorities are cited to that point. The same rule of consent is applicable to cases such as we have here. It was not shown or claimed that the wife of Keydoszius was the owner of the property searched, or that she had offended the law. In Re Tri-State Coal & Coke Co., 253 Fed. at page 608, it was ruled that any acquiescence by some agent as to the seizure and retention of property was simply a choice of evils, when confronted by an officer of the United States armed with a warrant which he was determined to execute, and that by virtue of no such means can the high constitutional rights of a citizen be invaded or taken away.

[5] Keydoszius himself objected to the search of the premises. Mere acquiescence on the part of Mrs. Keydoszius, it seems, was not enough, and there is no showing that her husband authorized her to consent. Whether or not she was his agent was a question of fact for the jury. 21 Cyc. 1234. But the government offered no proof that she was his agent; the burden of proving such being upon the government. 6 Ency. Ev. 807. She had no implied authority, in the absence of her husband, to license a search of his premises. Humes v. Taber, 1 R. I. 464. Without such authorization and consent—the affidavit and search warrant being insufficient—the search and seizure were unauthorized, and his prior attack thereon should have been sustained. Evidence having been admitted over the defendant's reserved exceptions, on the theory of consent lawfully given to the search, there was prejudicial error committed against the defendant, and the motion for a new trial in his case must therefore be granted. The illicit liquors and parts of a still will not be ordered returned.

This extended expression of my views is for the purpose of bringing to the attention of United States commissioners and those seeking search warrants the long-established conditions on which a search warrant may issue, and what the contents of such warrants must be when granted. The Eighteenth Amendment to the federal Constitution is as sacred as the Fourth and Fifth Amendments, but no more so. They stand on an equality. There is no inconsistency between them. The Volstead Act, like any other law, should be enforced as long as it is on the statute book. Efforts for its enforcement should be along legal lines, lest the law be made odious and the ultimate result be the defeat of justice.