## HAWKER v. QUECK.*

(Circuit Court of Appeals, Third Circuit. July 22, 1924.)

No. 2956.

1. **Intoxicating liquors ☞248—Searches and seizures ☞7—When existence of probable cause shown, failure to make finding does not render search illegal.**

If affidavits on which a search warrant is issued meet constitutional requirements, failure of issuing magistrate to state in warrant that he found probable cause will not render the search illegal, under the Constitution or Act June 15, 1917, tit. 11, §§ 3, 4 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼c, 10496¼d); existence of probable cause, and not finding of it, being essential to legality of warrant, which existence must be disclosed by affidavit.

2. **Intoxicating liquors ☞248—Affidavit held to sufficiently show existence of probable cause, legalizing issuance of search warrant.**

Affidavit by prohibition officer that he had good reason to believe and did believe that on premises designated liquor would be found, and that his information was obtained from affidavits made by stated persons, which were before the magistrate and showed purchases of whisky, *held* to sufficiently show existence of probable cause to legalize warrant.

WOOLLEY, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson and Robert M. Gibson, Judges.

Petition by Albert H. Queck, executor, for an adjudication that a warrant under which liquor was taken from deceased was void and the seizure illegal. From a judgment

*Certiorari denied 45 S. Ct. 99, 69 L. Ed. ——.

for petitioner (282 Fed. 942), Elmer G. Hawker, Group Head, etc., brings error. Reversed and remanded, with directions to dismiss.

Arthur W Henderson, of Pittsburgh, Pa., for plaintiff in error.

Van A. Barrickman, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and WITMER, District Judge.

BUFFINGTON, Circuit Judge. This case involves the legality of a seizure under search warrant of 24 cases and 10 quart bottles of liquors on the premises of one Queck, at 705 Amity street, in the borough of Homestead, Pa. As the officers making the seizure were guilty of no improper conduct in making it, the question whether the search was a reasonable one depends on the warrant under which they acted. Queck having died, his executor petitioned the court below to adjudge the warrant void and the seizure illegal. On hearing, the petition was granted, the court filing an opinion, in which, inter alia, it held:

"It will thus clearly appear that the existence of probable cause is a judicial conclusion, to be found by the commissioner or judicial officer to whom application for the warrant is made. It is a vital and jurisdictional fact and without such finding no search warrant can lawfully issue. The finding of probable cause should be based, not on the opinion or belief of a witness or witnesses, but on facts set forth in the affidavit from which the existence of probable cause may be fairly inferred. Otherwise, the conclusion would be that of the witness, and not of the judicial officer, in whom alone the Constitution has vested the extraordinary power to issue search warrants, and who is thus legally charged with the duty of preventing unreasonable searches and seizures. As the record does not show any finding of probable cause by the commissioner, we think the warrant fatally defective, and therefore the seizure thereunder illegal."

Thereafter this writ of error was taken out, and the contention is made that, on the face of the record as it came to this court, the commissioner issued the warrant in question illegally on the affidavit of Conner, a prohibition agent, who stated "that he had good reason to believe and does verily believe" that upon the premises of Queck (designated by street number) there is located and concealed a large quantity of liquor, etc.; that the information obtained by him (Conner) in relation to the sale of liquor by Queck was "obtained from affidavits made by William McClelland and Nelson Gibson." It will also be seen that the warrant issued by the commissioner embodied no statement or adjudication by the commissioner that he found probable cause for the issue thereof.

Turning now to the various documents found in the transcript of record, we note that Exhibit D,[1] reprinted in the margin from the record, averred that McClelland, on June 26, 1920, at the Arcade Hotel, of which Queck was proprietor, situate at No. 705 Amity street, Homestead, bought whisky on such premises, and in the presence of Nelson Gibson kept a sample thereof in a designated and numbered No. 13 bottle. By a similar affidavit, Exhibit E,[2] also reprinted in the margin from the record, we note that Gibson, on June 26, at the same hotel, of which Queck was proprietor, set forth that he also bought whisky on such premises in the presence of McClelland, and kept a sample thereof in a designated and numbered No 13X bottle. These affidavits were severally sworn to before notaries public by McClelland on June 30, and by Gibson on July 1, 1920, and on July 17, 1920,

---

[1] Exhibit D.

Personally appeared before me, a notary public, Oscar P. Lawson, one Wm. McClelland, of 232 Eighth Ave., Homestead, Pa., who, being duly sworn according to law, deposes and says that on or about the 26th day of June, A. D. 1920, one Arcade Hotel, Harry P. Queck, Prop., in the state of Pennsylvania, county of Allegheny, in the borough of Homestead, on street No. 705 Amity St., Homestead, Pa., at hour of 10:00, to 10:30, did then and there sell to me intoxicating liquors for beverage purposes in a building or on the premises above located, in violation of Public Act 66, known as H. R. 6810, of the Federal Statutes. The liquors sold to me were as follows: One drink of whisky, 50¢, which I took into my mouth and emptied into a bottle in company with Nelson Gibson, who did likewise. Bottle No. 13.

[2] Exhibit E.

Personally appeared before me, a notary public, C. R. Hobson, one Nelson Gibson, of 124 W. 11th Ave., Homestead, Pa., who, being duly sworn according to law, deposes and says that on or about the 26th day of June, A. D. 1920, one Arcade Hotel, Harry P. Queck, Prop., in the state of Pennsylvania, county of Allegheny in the borough of Homestead, on street No 705 Amity St., Homestead, Pa., at hour of 10 to 10:30, did then and there sell to me intoxicating liquors for beverage purposes in a building or on the premises above located, in violation of Public Act 66, known as H. R. 6810, of the Federal Statutes. The liquors sold to me were as follows: One drink of whisky, 50¢, which I took into my mouth and emptied in a bottle in company with Wm. McClelland, who did likewise. Bottle No. 13X.

J. W. Conner, a prohibition agent, appeared before Roger Knox, the United States commissioner, and made oath to an affidavit for a daytime search warrant,[3] reprinted from the record in the margin, in which, as will be seen, after alleging that he has good reason to believe that "in and upon the premises of Harry P. Queck, at 705 Amity street, in the borough of Homestead, Pennsylvania, part of said premises being used as a saloon for the sale of intoxicating liquors, there has been and is now located and concealed a large amount of intoxicating liquor, to wit, whisky," etc., the affidavit then states "that the information obtained by your affiant in relation to the sale of liquor by the said Harry P. Queck on the 26th day of June, A. D. 1920, was obtained from affidavits made by

William McClelland and Nelson Gibson." On the same day the commissioner issued a day search warrant, wherein was recited the appearance of Gibson, the prohibition agent, before the commissioner, his oath, and reduction to writing of the agent's belief of whisky on the premises, the grounds of his belief, viz. that "the information obtained by said J. W. Conner in relation to the sale of liquor by the said Harry P Queck was obtained by the said J. W. Conner, prohibition agent, from affidavits made by William McClelland and Nelson Gibson." Upon this warrant a search was had and a return made that "upon examination of the above-named premises we found 24 cases of liquor, 10 quart bottles, on second floor in living room."

[1] Was the warrant thus issued and properly served a legal justification of the search, or did it violate that constitutional provision which provides that "the right of the people to be secured against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons and things to be seized"? We cannot adopt this latter contention. The inhibition is not against every search and seizure, but against unreasonableness, and what constitutes the basis and warrant for reasonable searches and seizures is defined, namely, first, the existence of a fact, and that fact is probable cause; and, secondly, the evidence of that fact, namely, an "oath or affirmation and particularly describing the place to be searched and the persons or things to be seized." The foundation of a reasonable search and seizure, as constitutionally defined, is the existence of probable cause, and the Constitution does not provide that a finding of probable cause by a magistrate is either a foundation for warrant issue, will justify the warrant where the fact of probable cause does not exist, or that such finding of probable cause by the magistrate is necessary It is "particularly describing the place to be searched and the persons or things to be seized" which the Constitution requires should be evidenced by affidavit, and when the affidavit measures up to this constitutional requirement then a warrant may lawfully issue. If the affidavit does not meet the requirements which the Constitution requires before warrant issue, no assertion or statement by the magistrate in the warrant that he found probable cause would legalize the warrant. It is the exist-

---

[3] Search Warrant.

To J. W. Conner, Federal Prohibition Agent of the United States for the Western District of Pennsylvania, and to His Agents, and to Any or Either of Them—Greeting: Whereas, J. W. Conner, prohibition agent, has this day made oath in writing before the undersigned, Roger Knox, United States commissioner for the Western district of Pennsylvania, to the effect that he has good reason to believe, and does verily believe, that in and upon certain premises within the Western district of Pennsylvania, to wit, in and upon certain premises of Harry P. Queck, at 705 Amity street, in the borough of Homestead, Pennsylvania, part of said premises being used as a saloon for the sale of intoxicating liquors, there has been and is now located and concealed a large amount of intoxicating liquor, to wit, whisky, which has not been obtained lawfully and is held in violation of the National Prohibition Act, and sold and to be sold by him for beverage purposes in violation of the National Prohibition Act approved October 28, 1919; that the information obtained by said J. W. Conner in relation to the sale of liquor by the said Harry P. Queck was obtained by the said J. W. Conner, prohibition agent, from affidavits made by William McClelland and Nelson Gibson:

"Now, therefore, pursuant to section 2 of title XI of the act of Congress approved June 15, 1917, entitled 'An act to punish acts of interference with foreign relations and neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States and for other purposes,' you are hereby authorized and empowered to enter said premises during the daytime, and thoroughly to search the same for all property, and to seize and take the same into your possession, to the end that the same may be dealt with according to law. And hereof make due return, with a written inventory of the property taken by you, or either or any of you, without delay.

Witness the hand and official seal of the United States commissioner at Pittsburgh, in said district, this 17th day of July, A. D. 1920, and of the independence of the United States in the 144th year.

[Seal.] Roger Knox,
United States Commissioner.

Upon examination of the above-named premises we found 24 cases of liquor, 10 quart bottles, on the second floor in living room.

Edward E. Kendrick, Fed. Pro. Agent.

ence of probable cause, and not the finding by the magistrate, that makes warrant issue legal, and, as the existence of probable cause must be disclosed by the affidavit, the question before the commissioner, the court below, and this court is: Do the affidavits in question show probable cause?

[2] We are of opinion they do. Two men had lately visited the hotel of Queck, had each bought and paid for whisky, and had each brought away separate samples, which they preserved. The premises were described, the street number given, and the date and hour of purchase specified. These were facts, not inferences, and showed probable cause for the issue of a search warrant, and in view of them we think the petitioner failed to show the search of Queck's premises and the taking of the liquor found upon them was an unreasonable search and seizure.

The court below, as we have seen, based its opinion on the fact that the warrant did not show that the commissioner did not state in the warrant that he found probable cause. We find no such requirement, either in the Constitution or in sections 3 and 4 of title 11 of the Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10496¼c, 10496¼d), which provide:

Section 3: "A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person, and particularly describing the property and the place to be searched."

Section 4: "The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them."

We may further state that, while it was suggested at the argument that there was nothing to show that the affidavits of McClelland and Gibson were produced before the commissioner, we may add that, apart from the affidavits themselves being in the printed record, and the reference to them, both in the affidavit of Conner taken before the commissioner and in the warrant itself, the court at bar inquired of counsel as to the facts, and later on was furnished with information that Gibson's and McClelland's affidavits had been before the commissioner when he issued the warrant, and before the court when it passed on its legality.

Being of opinion, then, that the record papers before the commissioner and the court showed probable cause for the issue of the warrant, the decree below, holding it invalid, is reversed, and the cause is remanded, with directions to dismiss the petition.

WOOLLEY, Circuit Judge, dissents.

WITMER, District Judge. I fully concur in the opinion expressed by Judge BUFFINGTON, but I am further of the opinion that the validity of the search warrant is not necessarily decisive of the matter in dispute, as was said in the following opinion of this court, filed February 9, 1923:

"This case comes before the court upon an appeal from a final decree of the District Court, ordering the return to the petitioner, Albert H. Queck, executor of Harry P. Queck, deceased, of twenty-four (24) cases and ten quarts (10) of whisky, which were seized by federal prohibition agents under a search warrant. The facts briefly, so far as they are material, are as follows:

"Harry P. Queck, from whom the liquors were taken, was on July 17, 1920, in the hotel and saloon business at 705 Amity street, Homestead, Allegheny county, Pa. The premises were used, however, only in part for this purpose, the remainder being occupied by him as a residence. A search warrant was obtained upon affidavit of a federal prohibition agent to search the premises of Harry P. Queck, at 705 Amity street, and upon the search that followed under the warrant there was taken from his premises the liquor mentioned. Subsequently an information was filed against Queck to No. 243, November term, 1920, United States District Court, Western District of Pennsylvania. Before any proceedings were had thereon, however, Queck died on April 9, 1921. Up to the time of his death no petition had been received in relation to the search warrant or the whisky seized thereunder. On June 7, 1921, the last will and testament of Harry P. Queck was probated, and Albert H. Queck qualified as executor. Nothing further appears to have been done until June 29, 1922, when, upon motion of the United States attorney, the court entered a nolle prosequi to the criminal information filed.

"On July 29, 1922, over two years from the date of the seizure, and over a year after the death of Queck, a petition was filed by the executor, praying that the search warrant and affidavit be declared void, and that an order be entered directing the return to the estate of the liquor seized. A rule was awarded, commanding Elmer G.

Hawker, group head in charge of the Pittsburgh prohibition office, to show cause why the prayer of the 'petition should not be granted. The petition of the executor, among other things, alleges: '(3) That prior to national prohibition going into effect your petitioner's decedent, Harry P. Queck, owned and had in his possession a number of cases of whisky which was undisposed of at the time when national prohibition went into effect on January 17, 1920, and has stored it away in his private storeroom and one of his bedroom presses in that part of the hotel building which he had formerly set aside as his private apartments or private dwelling place for himself and family, and at the time of the grievances hereinafter complained of, and up to the time of the decedent's death, April 9, 1921.'

"The respondent, Elmer G. Hawker, filed an answer, and among other things says, as to paragraph 2 of the petition: 'Defendant has no information relative to the averments made in the third paragraph of the petition, and, if material, demands proof thereof. For further answer respondent avers that the liquor seized upon the premises of Harry P. Queck, deceased, was all nonbeverage whisky, that is, whisky withdrawn from bond after the National Prohibition Act became effective, and that said liquor could not lawfully be used for beverage purposes.' And he says in paragraph 5 of his answer: 'Respondent denies that said liquor was lawful personal property of Harry P. Queck, held by him for beverage purposes, as alleged, and avers that all of said liquor was withdrawn from bond after the National Prohibition Act became effective, and that said liquor could not be lawfully possessed for beverage purposes.' He also defends the validity of the search warrant.

"The court below, in an opinion filed August 18, 1922, held that: 'As the record does not show any finding of probable cause by the commissioner, we think the warrant fatally defective, and therefore the seizure thereunder illegal. Entertaining these views, the search warrant being invalid, the seizure was necessarily illegal, and the goods seized thereunder are directed to be returned in accordance with the prayer of the petition.' An order was accordingly entered to which exception was taken.

"Whether the search warrant is valid or not is not the determining factor in the case. Since, in any event, we would be confronted with the same proposition, that of decedent's title to the liquor, he having died before his guilt was determined on the charge

1 F.(2d)—6

of violation of the National Prohibition Act. If he legally possessed such liquor when it was taken from him, his estate is entitled to its return, whatever the means of seizure may have been; if otherwise, having then no legal title to the same, the rule is to be dismissed.

"That a person may lawfully possess liquor, where such was acquired lawfully prior to the effective date of the National Prohibition Act, is not doubted. Section 33, title 2 (Comp. St. Ann. Supp. 1923, § 10138½t), Act of October 28, 1919, known as the National Prohibition Act; State v. Lincoln Safe Deposit Co. et al., 254 U. S. 88, 41 Sup. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548. On the other hand, it is equally clear that no property rights exist in intoxicating liquor fit for beverage purposes acquired subsequent to the effective date of such act. Section 25, title 2, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½m); Rose v. United States (C. C. A.) 274 Fed. 245–252; United States v. Rykowski (D. C.) 267 Fed. 866; United States v. Kozman (D. C.) 267 Fed. 866.

"In section 25 it is provided that 'it shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property.' It is further provided in section 33, supra: 'After February 1, 1920, the possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facia evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this title.'

"In the Rykoski and Kozman Cases the court held that, while the searches and seizures were not of such a nature as the law provided, under the Silverthorne Lumber Company Case, the government was not able to avail itself of the information derived from its agents' unwarranted action. However, it was ordered that in neither of the cases should any of the illicit mash or liquors taken be returned, since the same were pronounced as contraband. In United States v. O'Dowd (D. C.) 273 Fed. 600, Judge Westenhaver puts the matter pointedly saying that the property seized in this case (being liquor illegally acquired) is 'like stolen property. No title to or property in it can exist in the defendant.'

"Under the above provisions of the act no property right shall at present exist in

liquors, unless the same were lawfully acquired and so used. No man can have any right of property in contraband liquor. As soon as it comes into existence it is forfeited. Elrod v. Moss (C. C. A.) 278 Fed. 123–129; United States v. Alexander (D. C.) 278 Fed. 308; Hall v. United States (C. C. A.) 267 Fed. 795. The appellee has laid stress upon the opinion of the United States Supreme Court in Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, as announcing the rule that intoxicating liquors seized upon an illegal search warrant or without such search warrant must be returned under any circumstances. In the instant case the liquor was seized without warrant of any kind, and a petition was presented for the return of the property; the petition alleging that the same was seized in the petitioner's home by government agents without warrant of any kind. The petition was denied, and at the trial a motion to prevent such property and the testimony relating thereto being given in evidence against the accused was also denied. There does not appear to have been any denial of the petitioner's title, nor that the same was lawfully possessed by the accused. The question as to whether the liquor was contraband was not before the court, and the return of it does not appear to have been opposed by counsel for the government. The sole question upon which this opinion seems to be based was a consideration as to whether such property should have been permitted in use as evidence against the defendant. While the language itself may appear somewhat broad, we do not think that the Supreme Court intended to pass upon the further question of whether the petitioner would have been entitled to more than its exclusion from evidence. In this conclusion we share the opinion expressed in O'Connor v. Potter (D. C.) 276 Fed. 32–33; O'Connor v. United States (D. C.) 281 Fed. 396.

"In the matter before us, the executor of Harry P. Queck alleges in his petition that the decedent owned and had in his possession the liquor in question at the time national prohibition went into effect, on January 17, 1920, and had it stored away in his private storeroom, etc. The defendant in his answer denies this allegation, and alleges that the liquor seized was all nonbeverage whisky, which could not lawfully be possessed as alleged by the petitioner. No testimony was taken, the court ordering the return of the liquor on the ground that the search warrant was invalid. In view of the issue raised by the petition and answer, as to whether there was any property right in the petitioner's decedent entitling his estate to a return thereof, the order of the court below was in error, and is therefore reversed. The case is therefore remanded to that court for further proceedings, not inconsistent with this opinion."