## ELROD v. MOSS et al.

(Circuit Court of Appeals, Fourth Circuit.   November 1, 1921.)

### No. 1907.

1. **False imprisonment ⊂⇒30—Intoxicating liquors ⊂⇒257—Evidence of information as to illegal sale of liquor held admissible on question of damages.**

   In an action for damages for illegal arrest and imprisonment and illegal search of plaintiff's automobile, where plaintiff sought to recover punitive damages, on the charge that the tort alleged was maliciously committed, it was competent for witnesses to testify that plaintiff had been selling contraband liquor and that they had communicated that fact to defendants.

2. **False imprisonment ⊂⇒24—Intoxicating liquors ⊂⇒257—Source of informer's knowledge of crime inadmissible.**

   In action for illegal arrest and imprisonment and illegal search of plaintiff's automobile, where plaintiff sought punitive damages on charge that tort was maliciously committed, and witness testified that he communicated to defendants information that plaintiff was transporting liquor, court properly refused to require witness to disclose the source of his information.

3. **False imprisonment ⊂⇒24—Intoxicating liquors ⊂⇒257—Invalid search warrant held admissible to refute charge of malice.**

   In action for illegal arrest and imprisonment and illegal search of plaintiff's automobile, where plaintiff sought punitive damages on charge that tort was maliciously committed, a so-called John Doe search warrant, though invalid, was admissible to refute the charge of malice and wantonness; and such was true as to another search warrant, under which one of the defendants acted, though its period of validity had expired.

4. **False imprisonment ⊂⇒7 (3)—Intoxicating liquors ⊂⇒257—Search warrant held in possession of officer.**

   In action for false imprisonment and illegal search of plaintiff's automobile, there was no merit in a contention that a search warrant in defendant's coat pocket, 10 or 12 feet away at the time of the search, was not in possession of the officer.

5. **False imprisonment ⊂⇒39—Intoxicating liquors ⊂⇒257—Reasonable time for execution of search warrant held for jury.**

   In action for illegal arrest and imprisonment and illegal search of plaintiff's automobile in South Carolina, whether a search of the auto-

mobile, made more than a month after date of search warrant, was made within a reasonable time, *held* for the jury, though the search warrant described the contraband liquor as "now unlawfully in possession, storage, and keeping"; defendant not being bound as a matter of law to know that all liquor placed in the car before the date of the search warrant had been taken out.

6. **Constitutional law ☞18—Statutes ☞224—Every provision construed with purpose of giving effect to other provisions.**

Every constitutional or statutory provision must be construed with the purpose of giving effect, if possible, to every other constitutional or statutory provision, in view of new conditions and circumstances in the progress of the nation and the state.

7. **Intoxicating liquors ☞249—Searches and seizures ☞7—Provisions as to unreasonable searches construed in light of provisions against sale, manufacture, and transportation of liquors; less particularity of description required in liquor search warrants.**

The provisions of federal and state Constitutions forbidding unreasonable searches must be construed in the light of the constitutional provisions against the sale, manufacture, and transportation of intoxicating liquor, as no man can have any rights of property in contraband liquor, or any right to transport it, being forfeited as soon as it comes into existence, and the degree of particularity of description in search warrants for contraband liquors is not the same as that required for other property.

8. **False imprisonment ☞7 (3)—Intoxicating liquors ☞257—Citizens summoned to assist officer bound to respond.**

When plaintiff, while resisting arrest, knocked a state officer from his automobile and fled, in defiance of a search warrant, such officer had the right to summon any citizen to his aid in the execution of the warrant, and one so summoned was bound to respond, and such right and obligation to respond was not weakened by the fact that he was a federal prohibition officer.

9. **Arrest ☞63 (3)—Warrant unnecessary for arrest for violation of prohibition law in South Carolina in presence of officer.**

Under Cr. Code S. C. 1912, §§ 828, 831, 840, concerning alcoholic liquors, an arrest can be made without a warrant by an officer detecting one in the act of violating the law, but such officer must have direct personal knowledge, through his hearing, sight, or other sense, of the commission of the crime by the accused.

10. **Arrest ☞63 (3)—Statute permitting arrest without warrant not repealed.**

The provisions of Cr. Code S. C. 1912, §§ 828, 831, 840, permitting arrest without warrant for violation of the Prohibition Law, were not repealed by changes in the law, under Act S. C. Feb. 16, 1915 (28 St. at Large, p. 90), and Act Feb. 24, 1917 (30 St. at Large, p. 75).

11. **Arrest ☞63 (3)—Provisions for arrest without warrant held valid.**

The provisions of Cr. Code S. C. 1912, §§ 828, 831, 840, permitting arrests without warrant where one is detected in the act of violating the liquor laws, are subject to no constitutional objection.

12. **Arrest ☞63 (2)—Intoxicating liquors ☞249—Search and seizure and arrest by federal officer for violation of Prohibition Law permissible.**

Under National Prohibition Act, tit. 2, § 26, a federal prohibition officer may make a search and seizure or arrest without warrant, where he has direct personal knowledge, through his hearing, sight, or other sense of a violation of the law.

13. **False imprisonment ☞39—Intoxicating liquors ☞257—Justification for arrest without warrant for violation of federal prohibition law held for jury.**

In action for illegal arrest and imprisonment and illegal search of plaintiff's automobile by a federal prohibition officer, where plaintiff had

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

resisted a warrant of state officer to search his car for contraband liquor, and had knocked him from his car to prevent the search, and in flight had thrown a package from his car, whether a federal prohibition officer near by had such direct personal knowledge, through his hearing, sight, or other sense, of the commission of the crime of transporting contraband liquor, as to warrant his making a search and arrest without a warrant, under title 2, § 26, of the National Prohibition Act, *held* for the jury.

In Error to the District Court of the United States for the Western District of South Carolina, at Greenville; Henry H. Watkins, Judge.

Action by B. O. Elrod against B. R. Moss and another. Judgment for defendants, and plaintiff brings error. Affirmed.

A. H. Dagnall and H. C. Miller, both of Anderson, S. C. (Dickson & Miller, of Anderson, S. C., on the brief), for plaintiff in error.

J. William Thurmond, U. S. Atty., of Edgefield, S. C. (J. E. Marshall, Asst. U. S. Atty., of Greenville, S. C., on the brief), for defendants in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. In this action for illegal arrest and imprisonment and illegal search of plaintiff's automobile, the verdict was for the defendant. The importance of the questions made as to arrest and search in the enforcement of national and state prohibition laws requires a detailed statement of the evidence. There is no conflict, except as to the reputation of the plaintiff.

The record contains the statement that "plaintiff, together with four other witnesses, testified in support of all the allegations of the complaint." The following is plaintiff's entire testimony:

"Mr. B. O. Elrod, plaintiff, testified that he was coming down Stump House Mountain at the time in question, when Mr. Moss jumped on his car and commanded him to stop: that he undertook to push him off the car, and Mr. Moss fell to the ground. I kept on down the road towards Walhalla, and on looking back through the glass in the back of my car I saw Mr. Gosnell on the running board of Mr. Parker's car. I was running 10 or 15 miles per hour around those sharp curves. The Parker car caught up with me. Then Mr. Gosnell commanded me to stop, and I did so. I would not permit Gosnell to search my car with a John Doe search warrant; and he proceeded to ride with me to Walhalla. I have made several trips up to Tunnel Hill. About one year and a half or two years ago, I was constable of Anderson county. I get my liquor from blind tigers around home. I was an officer of the law, and purchased a pint or so of liquor at different times. The last liquor I bought from blind tigers was six months ago, about a pint. I purchased whisky from a blind tiger about last Christmas, may have had a quart, but do not remember what it cost me."

The undisputed testimony on behalf of the defendants was as follows:

J. G. Mitchell, a rural policeman of Oconee county, having "information that plaintiff was hauling whisky," on May 18, 1920, saw him "going towards the mountain." Thereupon he made an affidavit before Magistrate W. M. Dillard that he was—

"informed by W. S. Bearden, and verily believes from such information and his own observations, that in one Ford roadster car driven by Constable Elrod, wherever met in the public highway in Oconee county, there is now deposited, stored and kept contraband liquors, in violation of law, to wit, jugs,

kegs, bottles, etc., and that said intoxicating and contraband liquors are kept, stored, and deposited by Constable Elrod car, his aiders and abettors, without a permit, in violation of the laws of the state."

The magistrate issued a warrant, directed to the sheriff of Oconee county or any constable in these words:

"Whereas, it appears to me, W. M. Dillard, a magistrate in and for the county and state above named, by the information of J. G. Mitchell, that the following contraband intoxicating liquors *are now unlawfully in the possession, storage, and keeping of, and on the premises occupied by Constable Elrod Ford car*, in the state and county above named, *the said place being Constable Elrod roadster car driven by him, to search car wherever met in Oconee county*, in or near the town or city of Westminster, and that the said J. G. Mitchell has probable cause to believe, and is informed and doth believe, that the said contraband liquors so illegally kept are in the house (or other place appurtenant thereof) of the said Constable Elrod aforesaid, and there diligently, by day, search for the said contraband liquors, and if the same or any part thereof shall be found upon such search, that you bring the said liquors so found, and also seize and bring all vessels, bar fixtures, screens, bottles, glasses, and appurtenances apparently used, or suitable for use, in and about such liquors, take a complete inventory of the same, and deposit the same with the sheriff, which said articles are there to remain, to be disposed of as required by the provisions of the dispensary laws."

On the same day Mitchell and the defendant Moss, a state constable, waited about two hours on the road for plaintiff, but he failed to return. Mitchell left the warrant with Moss. Moss was on the lookout to execute the warrant from that time, but did not find plaintiff in Oconee county until June 25, 1920. On that day, having information that plaintiff had again gone to the mountain, Moss and the defendant Gosnell, a federal prohibition officer whose assistance Moss had requested, waited on the mountain for plaintiff's return. Moss thus describes what followed:

"Mr. Elrod, he drove around to where I was in the road, in his Ford roadster, going about 7 or 8 miles an hour. As Elrod pulled up in the road, then I said to him that I have a search warrant for you and to stop that car, but he kept going faster. The search warrant was in my coat pocket in my car 10 or 12 feet away from me. I then jumped on the running board of his car and after I told him again to stop the car, he speeded up, and I reached over to switch his engine off. When I did that he struck me right here in the stomach like, and knocked me off on the left side of the car, and pretty nearly knocked the life out of me. I then hollered to Mr. Gosnell, who was down the road a piece, that this man had liquor in his car, and had knocked me off and nearly killed me, and to catch him. Mr. Gosnell pursued Mr. Elrod. I sat there 10 or 15 minutes and got sicker and sicker, finally vomited, then lay down on the ground on the side of the road, and rode to Walhalla in a passing automobile with a young lady and young man, leaving my car and coat and search warrant for Elrod's car on the mountain side, because I was unable to operate my car. Upon reaching Walhalla, I first went to the doctor and had him fix me up, and then went on down to the jail, and found Mr. Gosnell and Mr. Elrod. When Elrod knocked me off his car, he had speeded up to 15 miles an hour, and the distance from where I was knocked off his car to the point where I boarded it 112 steps. I never had the paper in my pocket on the running board, when I called to plaintiff to stop his car and bent over to switch off his engine. When we searched plaintiff's car at Walhalla we found no whisky."

Gosnell gives this account:

"He drove by Mr. Parker's car, and right at that time Mr. Moss jumped on the car, and he drove right on by Mr. Parker's car, and Mr. Moss reached

over as if to turn off the switch of the engine, and Mr. Elrod knocked him off. After Mr. Elrod knocked Mr. Moss off the moving automobile, Mr. Moss hollered to me to catch that man; he has got liquor in his car and nearly killed me. I called to Mr. Parker to bring his car and drive me down the mountain, and I jumped in the car with Mr. Parker. We went on down the road after the Elrod car. I could see it in front of us. Finally we got close to the Elrod car, and Elrod, and Elrod looked back, saw that we had him, and he then threw a package out of his car on the left-hand side of the road. I had my gun in my hand, and I finally caught up with the Elrod car, and told Mr. Elrod that we had a warrant to search his car; that Mr. Moss had the warrant. He said I could not search his car. I informed Mr. Elrod that I had a John Doe warrant, but he said I could not search under the John Doe warrant, and I did not search his car under it. I did not arrest him for assault and battery on Mr. Moss. I held Mr. Elrod to see how Mr. Moss was getting along, and because Mr. Moss told me Mr. Elrod had liquor in his car. I held him, to see if Mr. Moss wanted to make any charges against him. At that time he started to move out of the car on the left-hand side, and I told him to sit still, and grabbed him on his arm, 'I will hold you, to see how Mr. Moss is.' I put my hands on him, and told him to sit in that car and to consider himself under arrest."

Some witnesses testified that plaintiff's reputation as to dealing in whisky was good; others, that it was bad. Evidence as to the reputation of the plaintiff for peace and good order was not responsive to any issue made by the testimony, and was properly excluded.

[1] Since the plaintiff sought to recover punitive damages on the charge that the tort alleged was maliciously committed, it was competent for witnesses to testify that plaintiff had been selling contraband liquor and that they had communicated that fact to the defendants.

[2] Alexander, sheriff, testified he communicated to defendants information he had that plaintiff was transporting liquor. The District Judge properly refused to require him to disclose the source of this information. Vogel v. Gruaz, 110 U. S. 311, 316, 4 Sup. Ct. 12, 28 L. Ed. 158; In re Quarles, 158 U. S. 532, 536, 15 Sup. Ct. 959, 39 L. Ed. 1080.

[3] The so-called John Doe search warrant in the possession of the defendant Gosnell as a federal officer, although properly held invalid by the court, was clearly admissible to refute the charge of malice and wantonness. The search warrant under which Moss acted, even if its period of validity had expired, was admissible for the same purpose.

[4] We think there is nothing in the position that the warrant was not in the possession of the constable. It was in his coat pocket, 10 or 12 feet away, and was therefore substantially in his possession. State v. Shaw, 104 S. C. 359, 89 S. E. 322.

The vital question is whether the District Judge erred in refusing to charge that the search warrant dated May 18, 1920, had expired by its own terms on June 25, 1920, when the state constable, Moss, on its authority undertook to search plaintiff's automobile, and, on the contrary, charged that it was for the jury to decide whether it was executed within a reasonable time.

[5] The argument is, first, that the search warrant and the affidavit on which it was based describe the contraband liquor, in the language we have italicized, as "now unlawfully in possession, storage, and keeping," etc., and that the liquor in the car on May 18 must have been

taken from the car and disposed of before June 20, 1920; and, second, that the search was illegal because of unreasonable delay.

It is to be observed that the time "now" does not refer to the time when the warrant was to be executed, but to the time when the contraband liquor was alleged to be in the car. True, the warrant in terms directed search of the car for contraband liquor which was in it on May 18, 1920. But can the court hold, as a matter of law, that one who conveys contraband liquor disposes of all liquor obtained on one trip before he starts on another? Such a holding would mean that the execution of a search warrant even the day after the trip would be unreasonable, because the liquor in the car at the time of the issuance of the warrant could not be there at the time of the search.

In view of the ingenuity of criminals in storing in automobiles intoxicating liquors for transportation and sale, the court should not adjudge as a matter of law that on June 25, 1920, the constable was bound to know that all liquor placed there on or before May 18 had been taken out. The probability that it had been disposed of, and the question whether the constable should have known that none of it was in the car, were for the jury to consider on the issue of unreasonable delay in the execution of the warrant.

The statement of the constables that the warrant was procured with the view of making search in May is not conclusive that the search was illegal in June. Nor would the opinion of the officer that the liquor in the car on May 18th had been disposed of in itself justify his failure to obey the mandate of the warrant. The evidence is that in all the intervening time Constable Moss had been trying to catch up with the plaintiff and serve the warrant. The jury might well infer that the plaintiff had made no trip in the intervening time, and that the constable was duly diligent in executing the warrant in search of the liquor referred to therein.

In State v. Guthrie, 90 Me. 448, 38 Atl. 368, it was held as a conclusion of law that a delay of three days in executing a search warrant was unreasonable; the Maine statute requiring that the warrant should be returned immediately. There is no such statute in South Carolina, and the Supreme Court of that state, in Farmer v. Sellers, 89 S. C. 492, 72 S. E. 224, has held it to be the province of the jury to decide what is reasonable promptness in the execution of a search warrant, unless the delay is so great that reasonable men could draw only one conclusion. In that case the court said:

"A warrant cannot be legally enforced by an officer so long after its issuance that the search could not be reasonably referred to a bona fide effort for the recovery of the particular property therein mentioned. It cannot be held back by an executive officer as a menace to the citizen. But manifestly there can be no hard and fast limitation of time fixed by judicial authority as unreasonable in all cases and under all circumstances. Every case must depend on its own facts. The character of the person charged with having the stolen or contraband goods in possession, the nature of the crime, and other circumstances are to be taken into account. It is obvious to all men that a sporadic and untrained criminal and a professional criminal would stand on a different footing. In the case of an ordinary man, suspected of being in possession of stolen goods or contraband liquor, it might well be held beyond all doubt reasonable that a search warrant should be enforced within a few days. On the other hand, when the officer has the task of recovering

stolen goods or taking contraband liquor from a trained and disciplined criminal, the enemy of society, it may take weeks of patient observation to ascertain the moment when a search would be of any avail. In such a case the enforcement of the law might be rendered impossible by a judicial holding that a reasonable time for the execution and return of a warrant is the same as in the case of an ordinary criminal."

[6, 7] Furthermore, every constitutional or statutory provision must be construed with the purpose of giving effect, if possible, to every other constitutional or statutory provision, and in view of new conditions and circumstances in the progress of the nation and the state. Downes v. Bidwell, 182 U. S. 244, 21 Sup. Ct. 770, 45 L. Ed. 1088; South Carolina v. United States, 199 U. S. 437, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737. Hence, the provisions of federal and state Constitutions forbidding unreasonable searches must be construed in the light of the constitutional provision against the sale, manufacture, and transportation of intoxicating liquors. No man can have any right of property in contraband liquor, or any right to transport it. As soon as it comes into existence, it is forfeited.

Intoxicating liquors are made in so many forms and transported in so many different sorts of packages that, if the same particularity of descriptive identification were required as in the case of stolen goods, professional criminals who engage in the traffic would have practical immunity. Such a distinction between private papers and goods forfeited to the government is pointed out in Boyd v. United States, 116 U. S. 616, 623, 6 Sup. Ct. 524, 29 L. Ed. 746. In warrants for search and seizure of stolen goods particularity of description is necessary to the protection of the citizen from the seizure of other goods of the same general character, his lawful property. The protection of the rights of the accused does not require that the Constitution be construed to exact the same degree of particularity of description in search warrants for contraband liquors, because there is no right of property in contraband liquor, and hence there can be no danger to the citizen of being deprived of property which he is lawfully entitled to hold against the state.

The finding of the jury that the execution of the search warrant was not unreasonably delayed, and was therefore lawful, seems to be conclusive of the other points made.

[8] When the plaintiff resisted arrest, knocked the officer from the car, and fled, in defiance of the search warrant, the state constable, Moss, whose duty it was to enforce the warrant, had the right to summon any citizen to his aid in the execution of the warrant. Gosnell was summoned, and he was bound to respond to the summons. 6. C. J. 428; 2 R. C. L. 491; Reed v. Rice, 2 J. J. Marsh. (Ky.) 44, 19 Am. Dec. 122; 35 Cyc. 1526. The fact that he was a federal prohibition officer did not weaken his right and obligation to respond.

[9-11] The verdict in favor of both defendants as to the arrest was justified, even if Gosnell had not been a federal prohibition officer. After Moss had summoned Gosnell to his assistance, both were clothed with the authority of officers under the laws of South Carolina relating to intoxicating liquors, with full authority to execute the search warrant and to arrest the plaintiff, if necessary, in the performance

278 F.—9

of that duty. 5 C. J. 408; Braddy v. Hodges, 99 N. C. 319, 5 S. E.
17. Section 831, chapter 29, Criminal Code of South Carolina, con-
cerning alcoholic liquors, provides that any person detected in the act
of violating any of the provisions of this chapter shall be liable to ar-
rest without warrant. Section 828 requires that all contraband liq-
uor in possession of any person shall be seized without warrant. Sec-
tion 840 imposes upon constables and other officers mentioned the
duty to enforce the provisions of the statute. Subsequent changes in
the law left these provisions for the enforcement of the liquor law
unrepealed. 28. Stat. 90; 30 Stat. 75; State v. Quinn, 111 S. C. 174,
97 S. E. 62, 3 A. L. R. 1500. These provisions of law for arrest with-
out warrant are subject to no constitutional objection. State v. Byrd,
72 S. C. 104, 51 S. E. 542. Under them, however, the constable may
arrest without warrant only when he detects one in the act of violat-
ing the law. State v. Quinn, 111 S. C. 174, 97 S. E. 62, 3 A. L. R.
1500; Blacksburg v. Beam, 104 S. C. 146, 88 S. E. 441, L. R. A.
1916E, 714.

But Gosnell, who actually made the arrest, was not only a citizen
summoned to aid Moss in the execution of the search warrant, but he
was a prohibition officer, whose duty it was to enforce the federal pro-
hibition statute. 41 Stat. 305. Section 26 of title 2 of the statute pro-
vides:

"When the commissioner, his assistants, inspectors, or any officer of the
law shall discover any person in the act of transporting in violation of the
law, intoxicating liquors in any wagon, buggy, automobile, water or air craft,
or other vehicle, it shall be his duty to seize any and all intoxicating liquors
found therein being transported contrary to law. Whenever intoxicating
liquors transported or possessed illegally shall be seized by an officer he shall
take possession of the vehicle and team or automobile, boat, air or water
craft, or any other conveyance, and shall arrest any person in charge there-
of."

[12, 13] Under the federal as well as the state statutes, to justify
search and seizure or arrest without warrant, the officer must have
direct personal knowledge, through his hearing, sight, or other sense,
of the commission of the crime by the accused. But it is not neces-
sary that he should actually see the contraband liquor. Here the plain-
tiff had resisted the warrant to search his car for contraband liquor;
he had struck the officer from his car to prevent the search, and in
flight had thrown a package from his car. We think the jury might
well conclude that all this constituted a discovery by Gosnell of the
plaintiff in the act of transporting contraband liquor in his automobile,
and that Gosnell was justified in making the arrest for interference
by plaintiff with the performance of his official duty.

We find no error.

Affirmed.