## UNITED STATES v. SNYDER.

(District Court, N. D. West Virginia. January 28, 1922.)

1. **Searches and seizures ⊜➔7—No constitutional prohibition of search without warrant.**

   The Fourth Amendment, providing that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized," contains no prohibition of arrest, search, or seizure without a warrant, but only against "unreasonable" searches and seizures.

2. **Arrest ⊜➔63 (3)—Criminal law ⊜➔395—Intoxicating liquors ⊜➔249, 255— Person found with liquor on his person may be arrested without warrant and searched, and the liquor seized and used as evidence, and defendant is not entitled its return.**

   Under National Prohibition Act Oct. 28, 1919, tit. 2, § 25, providing that "it shall be unlawful to have or possess any liquor * * * intended for use in violation of this title, * * * and no property rights shall exist in any such liquor," a prohibition agent *held* to have authority to arrest without warrant a person found on the street with whisky on his person, and to search him and seize such liquor; and such person *held* to have no right to the return of such liquor which may be retained and used as evidence against him.

3. **Words and phrases —"Probable cause."**

   "Probable cause," which will justify a criminal accusation, is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probable Cause.]

Criminal prosecution by the United States against George Snyder. On petition of defendant. Denied.

T. A. Brown, U. S. Atty., of Parkersburg, W. Va., and Charles J. Schuck, Sp. Asst. U. S. Atty., of Wheeling, W. Va.

John B. Wilson and Fred L. Maury, both of Wheeling, W. Va., for defendant.

BAKER, District Judge. On the 10th day of January, 1922, T. A. Brown, United States district attorney for the Northern district of West Virginia, filed information against George Snyder, of Wheeling, Ohio county, W. Va., charging that he did unlawfully and knowingly possess, for beverage purposes, a large quantity, to wit, four pints, of intoxicating liquor, commonly called whisky, 'the same containing more than one-half of 1 per cent. of alcohol by volume, and being then and there fit for beverage purposes, and a further description of the kind and quantity whereof is to the United States attorney unknown, contrary to the act passed on the 28th day of October, 1919, commonly known as "National Prohibition Act," and against the peace and dignity of the United States of America.

On the 12th day of January, 1922, Fred L. Maury and John B. Wil-

⊜➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

son, attorneys for George Snyder, filed in this court their petition, alleging that on the 5th day of November, 1921, two certain state policemen and Thomas Arrington, a federal prohibition officer, went to a certain place of business, located on the northwest corner of Market and Eleventh streets in the city of Wheeling, Ohio county, W. Va., the two persons represented to be state officers being possessed with a state warrant for the searching of said premises and one John Doe; that the defendant, George Snyder, was standing on the sidewalk outside of said building to be searched, and was not an owner of, nor had any interest in, said building, or any business conducted therein; that said two state policemen entered said building with their alleged search warrant. There is no search warrant or copy thereof filed with said petition. Petition prays that United States be not allowed to use any of the evidence whatever obtained under the alleged illegal search warrant against the defendant George Snyder.

On the 12th day of January, 1922, T. A. Brown, United States attorney, filed answer to said petition, and denies every material allegation therein contained. On the 21st day of January, 1922, evidence was taken in open court, before the court, upon said petition and answer. The facts as developed show:

That on or about the 5th day of November, 1921, State Policemen Harry Burr and Corporal Kemper had sworn out a state search warrant for a certain place of business located on the northwest corner of Market and Eleventh streets, in Wheeling, Ohio county, W. Va., but show nothing as to a warrant for one "John Doe." That shortly before 2 o'clock of that day, state police telephoned Federal Officer Arrington to meet them at Seventh and Market streets at 2 o'clock, not saying what they wanted. At 2 o'clock Arrington met said state policemen and got on the rear of the motorcycle behind one of the police. After they had started, one of the state police told Arrington they were going to search 1061 Market street. Thereupon Federal Prohibition Officer Arrington responded, "Help yourselves; I am not going to take any part in the raid," in which determination the state police acquiesced. When the state police stopped near the property to be searched, Arrington left them, walking on up street. Turning the corner commonly known as "Market Square," Federal Prohibition Officer Arrington observed defendant, George Snyder, standing on the pavement just a few feet above the corner, with his overcoat on and his hands in his pants pockets. As Arrington approached the defendant Snyder, he observed his pockets very much bulged out and the neck of a bottle protruding from one of his pockets. Walking up to the defendant, he lifted the bottle half way out of his pocket, observing it to be whisky, placed the bottle back in defendant's pocket, placed him under arrest, took him in an adjoining building, removed the bottle previously observed, and upon further search found three other pints of whisky on his person. Thereupon Federal Prohibition Officer Arrington took defendant before United States Commissioner John Conrad and swore out the warrant upon which the information in question is based.

Testimony shows clearly that Federal Prohibition Officer Arrington had nothing to do with the swearing out of the alleged state warrant by state policemen or making the alleged raid thereunder. Neither did he assent to the state policemen making the raid or participate in any manner therein. It further shows that Arrington, leaving the state officers and walking on up street and around the corner, was not directed or requested by or under any instructions from either of the state policemen. Neither were the state policemen acting under any instructions from Arrington in any of their actions in connection with the proceeding.

[1] The state search warrant in question, or any proceedings thereunder, is in no wise before the court in this proceeding, as the warrant is not presented and no claim made that Arrington made his arrest and seizure thereunder. It is insisted that the arrest of the defendant, Snyder, by Federal Prohibition Officer Arrington, after seeing the bottle of liquor protruding from his pocket, and the search made pursuant thereto, is unconstitutional, and in conflict with the Fourth Amendment to the Constitution. This amendment reads as follows:

"The right of people to be secure in their persons, houses, papers, and effects, against unreasonable search and seizures. shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This provision of the Constitution should be construed in the light of, and in conformity with, principles of the common law, with which the framers of the Constitution were familiar. The amendment contains two separate and distinct prohibitions, to wit: First, it prohibits *unreasonable* searches and seizures; and second, it prohibits the issuance of warrants, except upon probable cause shown, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

There is, in the amendment, *no prohibition against search or seizure without a warrant.* Such a prohibition would have been subversive of the common law and fatal to the safety of human life and the repression of crime. The second prohibition in the amendment was aimed against *general search warrants* as had then been in vogue for many years prior to the noted Wilkes Case in 1776, when the validity of such warrants was questioned and brought to issue in the Court of King's Bench. That court held such warrants to be illegal and contrary to the principles of the English Constitution. Pomeroy, in his introduction to Constitutional Law, clearly states the case in the following language:

"This clause of the Constitution was particularly aimed at what were known in the English law as general warrants. These general warrants were used more especially in the case of political offenses, and were issued by the government, directing the officers to search all suspected places and seize all suspected persons, without describing any place or person. The execution of the warrant was left to the caprice of the individual who had it in charge. Although these warrants were so plainly contrary to the spirit of the English common law, and destructive of individual rights, and liable to become instruments of tyranny in the hands of an unscrupulous official, they continued in

use down to a time immediately prior to the American Revolution. The practice was finally declared illegal by the Court of King's Bench during the presidency of Lord Mansfield, in the case of Mooney v. Leach. The case arose on a warrant issued by one of the Secretaries of State, requiring the officers to make diligent search for the authors and publishers of a certain seditious libel, and they, or any of them, being found, to apprehend and seize, together with their papers." Pomeroy's Constitutional Law, p. 158, § 241.

*The Fourth Amendment to the Constitution contains no prohibition against arrest, search, or seizure without a warrant.* That was left under the rules of common law. The amendment provides *not* that no arrest, search, or seizure should be made without a warrant, but prescribes that there shall be no *unreasonable* search and seizure; in other words, that the people shall be secure in their persons, houses, papers, and effects against *unreasonable* searches and seizures; *not against all searches and seizures, but simply against unreasonable searches and seizures.* And this brings us to the question: In what cases may arrests, searches, and seizures be made without a warrant, under the principles of the common law and statutory law prevailing in this country?

[2] It was the rule of the common law, at the time of the adoption of the Constitution, and it has been the rule of the common law of this country, and of most of the statutory law, that a peace officer— an officer charged with the enforcement of the law—may arrest a criminal when caught in the act of committing a crime, and when thus arrested he may search him for evidence pertaining to the crime, and, as a general rule, retain such evidence for the use of the court in the prosecution or trial of the case; and this applies to all criminal cases, misdemeanors, as well as felonies.

In support of this statement I quote, among other cases, the following authorities, which are directly in point. I quote the following from 1 Hale's Pleas of the Crown, p. 587, a work prepared and compiled in the early part of the eighteenth century:

"I come in the next place to arrests, ex officio, without any warrant. If any affray be made in the presence of a justice of peace, or if a felon be in his presence, he may arrest him and detain him, ex officio, till he can make an arrest to send him to gaol, but then the warrant must be in writing to the gaoler (page 23, Car. B. R., Sanford's Case); and so he may by word command any person present to arrest (Dalt. cap. p. 328)."

He further states:

"A constable may ex officio arrest a breaker of the peace in his view, and keep him in his house or in the stocks till he can bring him before a justice of peace. So if A. be dangerously hurt, and the common voice is that B. hurt him, or if C. thereupon comes to the constable and tells him that B. hurt him, the constable may imprison him till he knows whether A. dies or lives (T., 43 Eliz., B. R., Dumbleton's Case), or can bring him before a justice. So if a felony be committed, and A. acquaint him that B. did it, the constable may take him and imprison him, at least until he can bring him before some justice of peace."

Blackstone, in his Commentaries (book 4, p. 292), states the common-law doctrine as follows:

"2. Arrests by officers without warrant may be executed, first, by a justice of the peace, who may himself apprehend or cause to be apprehended, by

word only, any person committing a felony or breach of the peace in his presence; second, the sheriff; and, third, the coroner may apprehend any felon within the county without warrant; fourth, the constable, of whose office we formerly spoke, hath great original and inherent authority with regard to arrests. *He may, without warrant, arrest any one for a breach of the peace committed in his view, and carry him before a justice of the peace; and in view of felony actually committed, or a dangerous wounding, where felony is likely to ensue, he may, upon probable suspicion, arrest the felon if he cannot otherwise be taken*; and if he or his assistants be killed in attempting such arrest, it is murder in all concerned."

Russell on Crimes, vol. 1, p. 725, states the doctrine as follows:

"A constable may arrest any person who, in his presence, commits a misdemeanor or breach of the peace, if the arrest is effected at the time, when, or immediately after, the offense is committed."

In volume 9, Laws of England, Lord Halsbury, pp. 309, 310, is this statement:

"A constable and also, it seems, a private person, may upon lawful arrest of a suspected offender take and detain property found in the offender's possession if such property is likely to afford material evidence for the prosecution in respect of the offense for which the offender has been arrested."

The Supreme Court of Massachusetts, in the case of Commonwealth v. Phelps, 209 Mass. 410, 95 N. E. 873, Ann. Cas. 1912B, 566, asserts:

"The further objection made by the defendant that an arrest without a warrant is in conflict with the Fourteenth Article of the Declaration of Rights of the Constitution of the commonwealth was disposed of in Rohan v. Sawin, 5 Cush. 281. It was there stated that these provisions were in restraint of *general warrants to make searches* and that they do not conflict with the authorities of officers or private persons under proper limitations to arrest without a warrant when authorized by the common law or by statute. To the same effect, see Wakely v. Hart, 6 Binn. 316. The same is true of the Fourth Amendment to the Constitution of the United States."

The court discussed the question directly in reference to the Constitution of Massachusetts, and then concluded by saying:

"The same is true of the Fourth Amendment to the Constitution of the United States."

Chief Justice Redfield, of Vermont, delivered the opinion of the court in the case of In re Powers, 25 Vt. 265, *a liquor case.* Under the law of Vermont the officers of the law were allowed to arrest a man for drunkenness, and if they found any bottles of whisky in his possession they had a right to take them. In that case the court said:

"It seems to us, that the eleventh article of our state Constitution, and the corresponding provisions in the United States Constitution, have no reference to the subject now before the court. It is in these words: 'That the people have a right to hold themselves, their houses, papers and possessions, free from search or seizure; and therefore warrants, without oath or affirmation first made, affording sufficient foundation for them, whereby any officer or messenger may be commanded or required to search suspected places, or seize any person or persons, his, her, or their property, not particularly described, are contrary to that right, and ought not to be granted.' This seems to be directed against *general warrants, and general search warrants in particular*, not specifically describing the persons, places, or property, to be searched, or arrested. This class of warrants, which in troublous and un-

settled periods in English history, were issued to a very alarming extent, by their Secretaries of State, and other magistrates perhaps, was prohibited, at the final settlement of the realm upon the Prince of Orange, and the Hanover family, I think, if not earlier; and similar provisions have been transferred to the United States and to most of the state Constitutions. It is very obvious this proceeding is not of that character. And it has never been supposed to prohibit arrests by private persons, or without warrant, in that class of cases *where delay would be perilous. Necessity is the first law of government as well as of nature, and is not to be abrogated by implication.*"

In the case of Getchell v. Page, 103 Me. 390, 69 Atl. 626, 18 L. R. A. (N. S.) 253, 125 Am. St. Rep. 307, the court states the law as follows:

"It is well settled that an officer making an arrest upon a criminal charge may also take into his possession the instruments of the crime and such other articles as may reasonably be of use as evidence upon the trial. The officer not only has the lawful power to do so, but he would be blameworthy if he failed to do so. The maintenance of public order and the protection of society by efficient prosecution of criminals require it. The title to the property remains in the owner, but the lawful possession is temporarily in the officer for evidentiary purposes, subject to the order of court. Thatcher v. Weeks, 79 Me. 547; Spaulding v. Preston, 21 Vt. 10; Bishop, Crim. Proc. 211.

For other cases showing the holdings of various states of the Union see Wakely v. Hart et al., 6 Bin. (Pa.) 317; Rohan v. Sawin, 5 Cush. (Mass.) 284, 285; Holker v. Hennessey, 141 Mo. 539, 42 S. W. 1090, 39 L. R. A. 165, 64 Am. St. Rep. 524. As to the holdings in the state of West Virginia, I find as follows:

In the case of State v. Baker, 33 W. Va. 319, 10 S. E. 639, decided in 1889, a pair of pantaloons, obtained by the jailor from the prisoner, without protest, and showing blood stains, was admitted in evidence over the objection of the prisoner. The point raised was whether this was compelling the prisoner to be a witness against himself, contrary to the Constitutional provisions. The court held that it was not. On page 333 of the opinion (10 S. E. 644) Judge Brannon quotes the old rule as follows:

"At a criminal trial, courts cannot take notice of the manner of obtaining evidence out of court. If it is competent and pertinent to the issue, it will be received."

In the case of State v. Edwards, 51 W. Va. 220, 41 S. E. 429, a notable case decided in 1902, and reported with copious annotations in 59 L. R. A. 465, and frequently cited in subsequent cases on the question, as supporting the old rule, the court held that instruments, devices, or tokens used in the commission of a crime are competent and legitimate evidence upon the trial of the accused. To the contention that the articles so seized should not be used in evidence, because the seizure was illegal, Judge Poffenbarger, on page 229 of the opinion (41 S. E. 432), answers:

"One complete answer to this is that, if it was an illegal seizure, that is no objection to the use of the papers as evidence, they being proper evidence in the case in other respects, for the court can take no notice how they were obtained, whether lawfully or unlawfully; nor would it form a collateral issue to determine that question."

Further on in his opinion he distinguishes that case from Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, saying in the Boyd Case the seizure was of private papers belonging to the defendant. The two cases are entirely unlike.

In the case of State v. Booker, 68 W. Va. 8, 69 S. E. 295, decided in 1910, a letter written by the prisoner to his mother, and intercepted by the jail keeper, was held not to be inadmissible in evidence, as contrary to the Constitutional provision in regard to compelling a person to be a witness against himself; and in the case of State v. Sutter, 71 W. Va. 371, 76 S. E. 811, 43 L. R. A. (N. S.) 399, decided in 1912, cocaine, forcibly and without a warrant taken from the person of the defendant, was held to have been properly admitted in evidence.

In 4 Wigmore on Evidence, § 2183, the same rule is thus stated:

"For these reasons it has long been established that the admissibility of evidence is not affected by the illegality of the means by which the party has been enabled to obtain the evidence. The illegality is by no means condoned; it is merely ignored."

In the case of Weeks v. U. S., 232 U. S. 392, 34 Sup. Ct. 344, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, in discussing that case, the court makes the following statement:

"What, then, is the present case? Before answering that inquiry specifically, it may be well by a process of exclusion to state what it is not. It is not an assertion of the right on the part of the government, always recognized under English and American law, to search the person of the accused when legally arrested to discover and seize the fruits or evidences of crime. This right has been uniformly maintained in many cases. 1 Bishop on Criminal Procedure, § 211; Wharton, Crim. Plead. and Practice (8th Ed.) § 60; Dillon v. O'Brien and Davis, 16 Cox, C. C. 245. * * * The federal courts cannot, as against a seasonable application for their return, in a criminal prosecution, retain for the purposes of evidence against the accused his letters and correspondence seized in his house during his absence and without his authority by the United States marshal holding no warrant for his arrest or for the search of his premises. * * * While an incidental seizure of incriminating papers, made in the execution of a legal warrant, and their use as evidence, may be justified, and a collateral issue will not be raised to ascertain the source of competent evidence, Adams v. New York, 192 U. S. 585, that rule does not justify the retention of letters seized in violation of the protection given by the Fourth Amendment where an application in the cause for their return has been made by the accused before trial. The court has power to deal with papers and documents in the possession of the district attorney and other officers of the court and to direct their return to the accused if wrongfully seized."

Neither the Weeks Case nor any of the cases cited by counsel for defendant go as far as this court, in this case, is asked to go. None of the property involved in them was contraband, or property in which Congress has said, as in section 25 of the Volstead Act (41 Stat. 315), as follows:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property."

The defendant in this case had not at the time and has not now any property right in the liquor. It is the same as if counterfeit coin,

lottery tickets, implements of gambling, and many other things of this character that might be enumerated, were found in his possession.

I find, in looking over the matter, that there are 33 states in the Union which allow, by statute, an arrest to be made without a warrant. In 33 states arrest of persons can be made without warrant if he commits an offence in the presence of the officer. These states are Alabama, Arkansas, California, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Virginia, West Virginia, and Wisconsin. Thirty-three states have adopted laws of this kind, so that it can be said to be the common law of the states, or the common law of the great majority of the states, in the Union, that a peace officer, a prohibition officer, has the right to arrest a criminal offender caught in the act of committing the crime; and when he arrests him, if he captures him with counterfeit coin, if he catches him with smuggled goods, if he catches him with stolen articles, if he catches him with liquor under the Prohibition Law, *he has the right, not only to arrest him without a warrant, but to search him and to retain the wet goods as evidence against him.*

Judge Deady, of the United States District Court, in the case of Ex parte Morrill (C. C.) 35 Fed. 267, in discussing the question as to when a person could be arrested without a warrant, after quoting the Fourth Amendment, states:

"It has never been understood that this provision was intended to or does prevent an arrest by a peace officer—a sheriff or constable—for a crime committed in his presence. Whart. Crim. Pl. § 8; 1 Bish. Crim. Proc. § 181. The knowledge derived by the officer from his observation, acting under the sanction of his official oath, is considered equivalent to information supported by the oath or affirmation of another. Now, a warrant of arrest may issue on 'probable cause' supported by oath; and by analogy a peace officer may arrest on probable cause derived from his own observation. At common law a peace officer might arrest without a warrant 'on reasonable grounds of suspicion'; and the facts and circumstances which furnish such grounds of suspicion amount to 'probable cause.' under the Constitution, which is such cause as will constitute a defense to an action for false imprisonment or malicious prosecution. Whart. Crim. Pl. § 9; 1 Bish. Crim. Proc. 182; Rap. and L. Law Dict. 'False Imprisonment,' 'Malicious Prosecution.' Probable cause is a probability that the crime has been committed by the person charged. The facts stated upon oath 'must induce a reasonable probability that all the acts have been done which constitute the offense charged.' Cranch, C. J., in United States v. Bollman, 1 Cranch, C. C. 379; Wheeler v. Nesbitt, 24 Howard. 551."

United States District Judge Paul, in the case of Carico v. Wilmore (D. C.) 51 Fed. 198, states:

" 'Officers who, by virtue of their offices, are conservators of the peace, have, at common law, the right to arrest without warrant all persons who are guilty of a breach of the peace, or other violations of the criminal law, in their presence.' 1 Amer. & Eng. Enc. Law, 734."

The Revised Statutes of the United States provide as follows:

"Sec. 3452. Every person who shall have in his custody or possession any goods, wares, merchandise, articles, or objects on which taxes are imposed by

278 F.—42

law, for the purpose of selling the same in fraud of the internal revenue laws, or with design to avoid the payment of the taxes imposed thereon, shall be liable to a penalty of $500, or not less than double the amount of tax fraudulently attempted to be evaded." Comp. St. § 6354.

A violation of this statute, under the federal law, is a misdemeanor. If committed in the present of an officer, the offender can be arrested without a warrant. I do not think that any one, after a careful study of the decisions of our state and federal courts, can well question the authority of an officer to arrest without a warrant a person in the act of committing a crime. When such an arrest has been made, a search by the arresting officer may be made for the evidence of the crime. Brroks v. Commonwealth, 61 Pa. 352, 100 Am. Dec. 645; Davis v. Russell, 5 Bingham's Reports (Eng.) 354; Beckworth v. Philby, 6 Barn. & Cress. (Eng.) 635; U. S. v. Hart, Fed. Cas. No. 15,316, 1 Pet. C. C. 390.

The Fourth Amendment does not prohibit searches and seizures without a warrant. *It only prohibits unreasonable searches or seizures,* and an unreasonable search or seizure is one for which there is in law a want of probable cause. In other words, it recognizes the rule of the common law then prevailing, and described in the decisions hereinbefore quoted. To hold that no criminal can, in any case, be arrested and searched for the evidence and tokens of his crime without a warrant, would be to leave society, to a large extent, at the mercy of the shrewdest, the most expert, and the most depraved of criminals, facilitating their escape in many instances.

In conclusion, I hold the framers of the Constitution were familiar with the common law on the subject; hence they were content to adopt the common-law rule, that no *unreasonable searches or seizures should be made in any case,* and that, if an attempt to search or seize should be made under a warrant, such warrant could only issue on the showing under oath of probable cause therefor. In either case, whether with or without warrants, the existence of *probable cause* is essential, if a warrant is resorted to, it cannot be of the general character of that in the Wilkes Case, but must "particularly describe the place to be searched, the person or thing to be seized, and the judge or commissioner issuing such warrant must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night."

[3] Probable cause, which will justify a criminal accusation, is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. There can be no doubt in the mind of any reasonable man that Prohibition Officer Arrington, in this case, had probable cause, supported by circumstances sufficiently strong in themselves, to warrant him in arresting the defendant, when he found him on the public streets of the city of Wheeling with four of his pockets bulged out and the neck of a whisky bottle protruding from one of his pockets, to such an

extent that the officer could detect what it was.   There can be no further doubt that, after Prohibition Officer Arrington took hold of the neck of this bottle and raised it partially out of defendant's pocket, while yet on the street, that he had the right to arrest defendant and search him for further evidence.

Therefore it naturally follows that defendant's petition will be and is hereby dismissed.