### O'CONNOR v. UNITED STATES.

(District Court, D. New Jersey. June 17, 1922.)

1. **Intoxicating liquors ⟨⇒250—Unreported liquors in place of business prima facie subject to seizure.**

 Intoxicating liquors, neither reported nor contained in the owner's private dwelling, but in a place of business open to the public, were prima facie subject to seizure under National Prohibition Act, tit. 2, §§ 25, 33.

2. **Searches and seizures ⟨⇒7—Reasonable searches and seizures not forbidden.**

 Reasonable searches and seizures are not forbidden by the Fourth Amendment to the United States Constitution, and there is no inhibition against making either without a warrant.

3. **Intoxicating liquors ⟨⇒249—Prohibition agents have authority to seize liquors in open place of business without search warrant.**

 Agents of the federal Prohibition Commissioner, having lawfully entered a place of business open to the public, and being made conscious through sight and smell of the possession of liquor, and noting conditions evidencing that the liquors were kept in violation of the National Prohibition Act, had the legal right to search and seize them without first securing a search warrant.

Petition by Edward J. O'Connor for the return of whiskies taken from his place of business by agents of the federal Prohibition Commissioner. Petition denied.

John A. Coan, of South Amboy, N. J., for petitioner.
Isaac Gross, Asst. U. S. Atty., of Jersey City, N. J.

RELLSTAB, District Judge. The petitioner asks for the return of certain whiskies taken from his place of business by two agents of the federal Prohibition Commissioner. The testimony taken on the return of the rule to show cause discloses that, prior to the time the Eighteenth Amendment went into effect, the petitioner was a saloon keeper, selling intoxicating liquors at 123 Broadway, South Amboy, N. J.; that he remained in possession of the premises thereafter down to the time of the seizure; that the premises contained a bar, chairs, and tables, and the usual paraphernalia incident to a liquor saloon, and were open to the public; that a short time previous to the seizure one of the agents purchased intoxicating liquors on these premises, which he drank thereon; that, when the agents entered the premises on the day in question, they found empty unwashed glasses on the bar,

still wet and smelling of whisky, and several bottles of whisky (one only partly filled) in an open safe, located in a small room, called an office, leading from the back of the bar; that the agents took these bottles of whisky from the safe in the presence of the petitioner's son, who was in charge of the premises. The petitioner was subsequently apprehended, and is now awaiting trial on a criminal information charging him with violating the National Prohibition Law (41 Stat. 305) in respect to the possession of such liquors. The agents seized these liquors without a search warrant, and the petitioner bases his right to their return upon the absence of such warrant.

The National Prohibition Act makes it—

"unlawful to have or possess any liquor * * * intended for use in violating this title [title 2], or which has been so used, and no property rights shall exist in any such liquor." Section 25.

It also declares that—

["The possession of liquors by any person not legally permitted under this title to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold * * * or otherwise disposed of in violation of the provisions of this title." Id. § 33, 1st cl.

It also provides that—

"Every person legally permitted under this title to have liquor shall report to the Commissioner within ten days after the date when the Eighteenth Amendment of the Constitution of the United States goes into effect, the kind and amount of intoxicating liquors in his possession." Id. § 33, 2d cl.

[1] The petitioner admits that he made no report of the liquors in question, as required in the last-quoted provision. As these liquors were neither reported nor contained in the petitioner's private dwelling, but in a place where business of some kind was carried on by him, and which place was open to the public, they were prima facie subject to seizure.

The petitioner invokes the Fourth Amendment to the United States Constitution, and cites Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, and Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, in support of his contention that these liquors were illegally taken. But neither this amendment nor the cited cases are applicable to the facts of this case.

As to the amendment: It reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It is to be construed in conformity with the basic principles of the common law, which were familiarly known to the framers of the Constitution. Kansas v. Colorado, 206 U. S. 46, 94–95, 27 Sup. Ct. 655, 51 L. Ed. 956, and cases cited. Mr. Story, in his excellent work on the Constitution (5th Ed., § 1902, p. 648), with reference to this amendment, says:

"It is little more than the affirmance of a great constitutional doctrine of the common law."

The use of writs of assistance by the British government in the American colonies just prior to the Revolution, empowering revenue officers, at their discretion, to search suspected places for smuggled goods, following on the heels of the use of general warrants in political matters in the mother country, were productive of intense indignation among the colonists, and no doubt contributed to the exciting causes which led to the Revolution and the incorporation of this particular amendment into the organic law of the land. See Story on Constitution, supra; Boyd v. United States, 116 U. S. 616, 625, 6 Sup. Ct. 524, 29 L. Ed. 746; Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177.

[2] It is to be noted that this amendment has a dual purpose: First, the forbidding of unreasonable searches and seizures; and, second, the specifying of certain particulars to be observed before issuing warrants. Reasonable searches and seizures are not forbidden. Boyd v. United States, supra, 116 U. S. pp. 623, 624, 641, 6 Sup. Ct. 524, 29 L. Ed. 746; Haywood v. United States (C. C. A. 7) 268 Fed. 795, 803; United States v. Bookbinder (D. C.) 278 Fed. 216, 218. And there is no inhibition of making either without a warrant. Kathriner v. United States (C. C. A. 9) 276 Fed. 808; United States v. Snyder (D. C.) 278 Fed. 650. The right to arrest a person or thing offending against the law, without written warrant, under certain circumstances, long pre-existed the causes which led to the judicial condemnation of arrest on warrants which failed to particularly describe the person or thing to be apprehended. This right was not drawn into question by such condemnation (In re John Wilkes, 19 Howell's State Trials, 981, 988; Dryden Leach v. Money, Id. 1001, 1026; Entick v. Carrington, Id. 1029; Wilkes v. Wood, Id. 1153), and continues unaffected by the prohibition and restrictions embodied in the Fourth Amendment or other parts of the United States Constitution (United States v. Welsh [D. C.] 247 Fed. 239; Ex parte Harvell [D. C.] 267 Fed. 997; United States v. Borkowski [D. C.] 268 Fed. 408; United States v. Kraus [D. C.] 270 Fed. 578, 582; Kathriner v. United States [C. C. A. 9] 276 Fed. 808; Elrod v. Moss [C. C. A. 4] 278 Fed. 123; United States v. Bateman [D. C.] 278 Fed. 231; United States v. Snyder [D. C.] 278 Fed. 650; In re Mobile [D. C.] 278 Fed. 949).

As to the cases cited by petitioner: In Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and Amos v. United States, 255 U. S. 313, 41 Sup. Ct. 266, 65 L. Ed. 654, the defendants' respective homes were entered and searched, and certain of their properties (relevant evidence on the charges against them) seized, without a search warrant. These respective properties were subsequently used as evidence against them in a trial which resulted in their conviction. In Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182 (64 L. Ed. 319), the defendants had been adjudged in contempt for refusing to obey an order of court "to produce [certain] books and documents of the company before the grand jury to be used in regard to alleged violation of

the statutes of the United States" by the said defendants. See 251 U. S. at page 390, 40 Sup. Ct. 182, 64 L. Ed. 319. Knowledge of the contents of these books and documents had been obtained by the United States attorney while in his possession through an illegal seizure thereof.

These cases are of a different type than the instant case. In the Weeks and Amos Cases, the seizures were made in the defendants' private dwellings. In the Weeks and Silverthorne Cases private books and papers were seized for the purpose of evidence only. In the instant case the things seized, in the circumstances in which they were found, were contraband, stripped of any private rights therein. In this respect, the property seized was of an entirely different character from that involved in the three cases last mentioned.

The books and documents in the Weeks and Silverthorne Cases were not forfeitable to the government. If they had been legally seized, the government would have been entitled to only the temporary possession thereof, and that only for evidential purposes. And the liquors in the Amos Case, having been seized in the private dwelling of the defendant, without warrant, presumptively continued in his private ownership. Not so, however, as to the liquors seized in the instant case. They, by reason of their possession not having been reported as required by law, their location in a place other than a private dwelling, and the circumstances in which they were found, as before narrated, were forfeited to the government (United States v. Rykowski [D. C.] 267 Fed. 866; United States v. Fenton [D. C.] 268 Fed. 221; United States v. O'Dowd, 273 Fed. 600, 602; Elrod v. Moss [C. C. A. 4] 278 Fed. 123)—were liable to seizure, and on the order of the court subject to be impounded or destroyed (National Prohibition Act, tit. 2, §§ 26, 27).

[3] The agents who took these liquors were not trespassers; they were officers of the law, charged with the duty of investigating violations of the act. Title 2, § 2. In the performance of this duty, they had all the power and protection—

"which is conferred by law for the enforcement of existing laws relating to the manufacture or sale of intoxicating liquors under the law of the United States." Id. § 28.

As such officers they had the right, without a written warrant, to arrest any person committing a crime in their presence (Blackstone's Comm. book IV, p. 292; 1 Bishop Crim. Proc. §§ 166–171, 182–184), and to seize and retain the evidence of the commission of such crime for use in the subsequent prosecution of the offender. They would also have a right to seize liquor unlawfully possessed and hold it for subsequent disposition by the court. As noted, the premises in question were not occupied and used as a dwelling only, but as a business place open to the public, and therefore were not within the exception of section 25 of title 2 of the National Prohibition Act, and the prohibition agents had a legal right to enter thereon. Having lawfully entered, and being made conscious, through sight and smell, of the possession of the liquors, and noting conditions evidencing that the liquors were kept in violation of the National Prohibition Act, they had the

legal right to seize them without first securing a search warrant. United States v. Borkowski (D. C.) 268 Fed. 408; Kathriner v. United States (C. C. A. 9), 276 Fed. 808; United States v. Bateman (D. C.) 278 Fed. 231; United States v. Snyder (D. C.) 278 Fed. 650; In re Mobile (D. C.) 278 Fed. 949.

The petition for the return of the liquors is denied.